UNITED STATES v. CORBETT et al.

(District Court, W. D. Wisconsin. June 5, 1908.)

No. 118.

1. BANKS AND BANKING — NATIONAL BANKS — OFFENSES BY OFFICERS—FALSE REPORTS.

An indictment charging officers of a national bank with making a false entry in a report made by them, "with intent to deceive an agent appointed to examine the affairs of the association, to wit, the Comptroller of the Currency of the United States" does not charge an offense under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), the comptroller not being charged with any duty to examine national banks, although he is given power to appoint agents for that purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 971.]

2. SAME.

A general averment in an indictment against officers of a national bank that a false entry charged to have been made by them in a report to the Comptroller of the Currency was made "with intent to injure and defraud the association" is insufficient to state an offense under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), no facts being alleged to show in what manner the bank could have been injured or defrauded thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 971.]

On Motion to Quash Portions of Each Count of the Indictment and Demurrer to the Rest of Such Counts.

Wm. G. Wheeler and H. H. Morgan, U. S. Attys., and W. C. Owen, Special Asst. U. S. Atty. Gen.

John Barnes and T. J. Connor, for defendants.

SANBORN, District Judge. This is a prosecution under section 5209, Rev. St. (U. S. Comp. St. 1901, p. 3497), for making false entries in a certain report made by defendants. Each count charges that the entry in question was false, and was made with intent to deceive an agent appointed to examine the affairs of the association, to wit, the Comptroller of the Currency of the United States. The question is whether any offense under the laws of the United States is thus charged.

That part of section 5209 creating the offense of making false entries in reports of national bank officers is as follows:

"Every president. director * * * or agent of any association, who * * * makes any false entry in any book, report or statement of the as-

sociation, with intent to injure or defraud the association, * * * or to deceive any agent appointed to examine the affairs of any such association * * * shall be deemed guilty," etc.

. . The first question is whether the Comptroller of the Currency is an agent appointed to examine the affairs of the bank. The only duty charged by the statute upon the Comptroller is to receive and publish the report. The law does not make it his duty to examine the bank affairs. The receiving, reading, and publication of the report is not an examination of the affairs of the bank. The national banking act (Act June 3, 1864, c. 106, 13 Stat. 99), of which section 5209 is a part, provided that the Comptroller should appoint suitable persons to make an examination of the affairs of every banking association, who should have power to make a thorough examination into all the affairs of the association, and who might examine any of the officers or agents thereof under oath; and who should make a full and detailed report to the Comptroller of the condition of the association. Section 5240, Rev. St. (U. S. Comp. St. 1901, p. 3516). It was not until January 20, 1873, that the Comptroller was given any power to examine national banks, and such power was restricted to banks in the District of Columbia. Section 332, Rev. St. (U. S. Comp. St. 1901, p. 190). It seems entirely clear that the person appointed to examine the affairs of a bank is one of the examiners so to be appointed, and who have now become a permanent force of the department, and not the Comptroller of the Currency, who is only to receive and publish the report. The statute is highly penal, and cannot be extended by construction. The conclusion reached is sustained by United States v. Bartow, 10 Fed. 874, and Clement v. United States, 149 Fed. 305, 316, 79 C. C. A. 243. While the point may have been involved in Cochran v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704, yet it is not there discussed nor decided. It is also plain in this case that it would have availed nothing in drawing the indictment to have charged that the false entries were made with intent to deceive one of the examiners appointed under section 5240, because the government could not have shown any statute or practice under which the report sent to the Comptroller is shown or delivered to any such examiner, or that the defendants had any knowledge that such report would ever be seen or come to the hands of such an examiner. In other words, the indictment was drawn upon the only theory by which it could possibly have been sustained by proof.

The indictment also charges that the entries were made with intent to injure and defraud the bank itself; but how this could be does not appear. It is barely possible that some harm might indirectly have come to the bank by the publication of the false report in the vicinity of the place where the bank was located, but this possibility is not sufficient to show the definite intent shown by the statute. The report must have been made with the purpose on the part of those signing it to injure and defraud the bank. The report could not possibly change the actual condition of the bank, and a false report showing a better condition than in fact existed might as readily be a benefit to the bank as a detriment. At all events, the detriment would be merely specu-

lative, insufficient to afford proof of a positive intent to injure and defraud the bank.

By a recent statute the case may be reviewed by writ of error on the part of the United States at this stage, and for that reason the matter should be disposed of now, before the defendants have been put in jeopardy, rather than by arrest of judgment, after a possible conviction.